UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ERIN GARDNER,<br><br>           Plaintiff,<br>  v.<br><br>UNIVERSITY OF CONNECTICUT<br>HEALTH CENTER,<br><br>           Defendant. | 3:12 - CV- 1168 (CSH)<br><br><br>NOVEMBER 18, 2013 |

### RULING ON JOINT MOTION FOR PROTECTIVE ORDER

**HAIGHT, Senior District Judge:**

### I.   INTRODUCTION

Plaintiff brings this action seeking relief and damages for the alleged unlawful termination of her employment as a clinical social worker by the State of Connecticut, University of Connecticut Health Center, Correctional Managed Health Care ("UCHC").[1]  Specifically, plaintiff alleges that she has had a seizure disorder since 1999, "suffered a partial seizure during the course of her working hours" at York Correctional Institute on June 21, 2012, was subsequently determined to be "not . . . physically fit for duty" by UCHC, and discharged for her disability on June 28, 2012.  Doc. 1 ("Complaint"), ¶¶ 15, 22-36.  Plaintiff brings this action for discriminatory termination pursuant to

---

[1]  While employed by UCHC, plaintiff was assigned to the York Correctional Institution, a high-security facility in Niantic, Connecticut. Her partial seizure on June 21, 2012 occurred in the hallway of Building 4 at that facility.  Doc. 1, ¶ 22.

1

the Rehabilitation Act, 29 U.S.C. §§ 791, 794, and 794a, *et seq.*[2] Doc. 1, ¶ 1.

Pending before the Court is the parties' "Joint Motion for Protective Order" [Doc. 25], seeking the Court's entry of a stipulated "Joint Protective Order" [Doc. 25-1] pursuant to Fed. R. Civ. P. 26(c). In particular, the proposed protective order limits disclosure of "all disks . . . which show or depict any inmate and any part of the inside or outside of a Connecticut Correctional Institution." The order then limits those to whom the disks may be shown (*i.e.*, counsel of record and their staff; experts, investigators and consultants retained by counsel; this Court; any court reporter in the proceedings of this action; plaintiff in the presence of her counsel; and witnesses at deposition). Doc. 25-1, ¶ 1(a)-(g). The order mandates notice of, and agreement to be bound by, the order with respect to "any person to whom the disks are to be disclosed." *Id.*, ¶ 2. In addition, the order prohibits copying of the disks "without prior written approval of the Court." *Id.,* ¶ 3.

## II. DISCUSSION

The scope of discovery in a federal action is well-defined and intentionally broad. Absent a court order limiting its permissible range, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In this context, relevance is viewed broadly in that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id. See also Sedona Corp. v. Open Solutions, Inc.*, 249 F.R.D. 19, 21 (D.Conn. 2008); *Allied-Signal, Inc. v. Allegheny Ludlum Corp.*, 132 F.R.D. 134, 136 (D. Conn. 1990). Relevancy

---

[2] Due to plaintiff's federal claim, the Court has "federal question" subject matter jurisdiction over this action. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

thus creates a broad vista for discovery, *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1988), such that a trial becomes "less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent," *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958).

Despite this liberal construction of relevance in discovery, pursuant to Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Moreover, parties are encouraged "to jointly propose a protective order to ensure that any potentially privileged [or confidential] materials that may be disclosed between the parties during discovery are not publicly revealed unless they are eventually filed with the Court." *Giordano v. United States*, No. 3:11cv9 (MRK), 2011 WL 1831578, at *4 (D.Conn. Mar. 17, 2011). For example, protective orders may be useful in protecting materials such as, *inter alia*, trade secrets; proprietary or confidential research, development, and commercial information; medical records; information implicating the reputational interests of third parties; and information which, if disclosed, could negatively impact public health and safety.

In general, a protective order may only be issued upon a finding of "good cause," which calls for a sound basis or legitimate need to limit discovery of the subject information. Fed. R. Civ. P. 26(c). The burden is on the party seeking the order to demonstrate good cause for its issuance. *Uniroyal Chem. Co. Inc. v. Syngenta Crop Prot.*, 224 F.R.D. 53, 56 (D. Conn. 2004). *See also In re Agent Orange Product Liab. Litig.*, 821 F.2d 139, 145 (2d Cir. 1987), *cert. denied sub nom. Dow Chem. Co. v. Ryan*, 484 U.S. 953 (1987). *See also generally* 10A Fed. Proc., L. Ed. § 26:279. "Good cause" may be established upon a showing that "disclosure will work a clearly defined and

very serious injury" to the party seeking protection. *Uniroyal Chem. Co.*, 224 F.R.D. at 56.

In the case at bar, I find that on the face of the jointly proposed protective order, disclosure of images or materials on disks "which show or depict any inmate and any part of the inside or outside of a Connecticut Correctional Institution" may include images which would potentially result in "serious injury" to the subject inmates and prison. In particular, if disseminated to the public, such images may unduly invade the privacy of inmates and/or impair prison security. *See, e.g., Houchins v. KQED, Inc.*, 438 U.S. 1, 5 n.2 (1978) ("Inmates in jails, prisons, or mental institutions retain certain fundamental rights of privacy; they are not like animals in a zoo to be filmed and photographed at will by the public or by media reporters"); *Covino v. Patrissi*, 967 F.2d 73, 78 (2d Cir. 1992) ("prison security is not burdened unduly by the recognition that inmates do retain a limited right to bodily privacy"); *Thornburgh v. Abbott*, 490 U.S. 401, 415 (1989) (maintaining prison security is an undeniably significant penalogical interest); *Duamutef v. Hollins*, 297 F.3d 108, 113 (2d Cir. 2002) (recognizing the "paramount importance of exercising caution in matters of prison security").

Federal courts have repeatedly found good cause to limit discovery or disclosure of information implicating the safety and security of prisons. *See, e.g., Matson v. Hrabe,* No. 11–3192–RDR, 2013 WL 4483000, at *5 (D.Kan. Aug. 20, 2013) ("The Court agrees that information relating to other inmates and their housing assignments could potentially create security concerns . . . . In fact, '[p]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'") (quoting *Verdecia v. Adams,* 327 F.3d 1171, 1175 (10th Cir.2003)); *Cooper v. Sely,* No. 1:11–cv–00544–AWI–MJS (PC), 2013 WL 146428, at *3 (E.D. Cal. Jan. 14, 2013) ("Where otherwise discoverable information would pose a threat to the safety and security of

the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur."); *Biscoe v. Garcia*, No. CV11–943–PHX–ROS (LOA), 2012 WL 3228820, at *1 (D. Ariz. Aug. 6, 2012) ("Discovery in prisoner cases raises unique challenges. For example, where otherwise discoverable information would pose a threat to the safety and security of the prison or infringe upon a protected privacy interest, a need may arise for the Court to balance interests in determining whether disclosure should occur.") (internal quotations and citation omitted); *Robinson v. Adams*, No. 1:08–cv–01380–AWI–BAM PC, 2012 WL 912746, at *2–3 (E.D.Cal. Mar.16, 2012) (issuing protective order regarding documents containing information which implicated the safety and security of the prison).[3]

In sum, upon review of the parties' proposed terms, the Court will approve and enter their "Joint Protective Order" as set forth at Doc. 25-1. There is good cause for the parties to protect information during discovery which has the potential to negatively impact inmate privacy and/or prison security.

Nonetheless, the parties are reminded that this protective order protects the referenced disks for purposes of discovery and does not determine admissibility at trial and/or serve to override the strong presumption of public access to judicial documents and proceedings.[4] As the parties have

---

[3] Also with respect to law enforcement, federal common law recognizes "a qualified executive privilege designed 'to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation.'" *El Badrawi v. Dep't of Homeland Sec.*, 258 F.R.D. 198, 203 (D.Conn. 2009) (quoting *In re Dep't of Investigation*, 856 F.2d 481, 484 (2d Cir.1988)).

[4] The Second Circuit has defined a judicial document as an item which is "relevant to the performance of the judicial function and useful in the judicial process." *United States v. Amodeo*, 44

acknowledged, Doc. 25-1, ¶ 6, if either party "fil[es] the disks with the court and/or mov[es] for their introduction into evidence," the disks' contents will be accessible to the public unless the parties, if so advised, make a proper motion to seal them.

Furthermore, the fact that the parties have stipulated to a court-approved protective order will not be dispositive on the issue of whether designated materials should be sealed. D. Conn. L. Civ. R. 5(e)(3) ("No document shall be sealed merely by stipulation of the parties. A confidentiality order or protective order entered by the Court to govern discovery shall not qualify as an order to seal documents for purposes of this rule."). *See, e.g., Vassiliades v. Israely*, 714 F. Supp. 604, 606 (D. Conn. 1989) ("neither the parties' agreement to keep the related matter confidential nor the consent of defendants to the instant motion can bind the Court to order a sealing that is otherwise impermissible"); *Landmark Amer. Ins. Co. v. Magoo's II, Inc.,* No. 3:07-CV-327 (MRK), 2007 WL 3023265, at *1 (D. Conn. Oct. 12, 2007) ("parties' agreement to seal or limit disclosure of documents on file is not a sufficient basis for granting such an order" to seal); *Doctor's Assoc. Inc. v. QIP Holders LLC*, No. 3:06-CV-1710 (VLB), 2007 WL 2782516, at *1 (D. Conn. Sept. 24, 2007) ("An agreement by parties to an action to seal or limit disclosure of documents on file is not a sufficient basis for granting such an order [to seal].").

Rather, in order for the Court to grant such a motion to seal, the moving party must demonstrate that "sealing is supported by clear and compelling reasons and is narrowly tailored to serve those reasons." D. Conn. L. Civ. R. 5(e)(3). In addition, a motion to seal shall be accompanied

---

F.3d 141, 145 (2d Cir.1995). Such documents include, for example, those filed in support of motions and/or presented to the court as exhibits at an oral argument, hearing or trial.

by a supporting written memorandum of law.  *Id.* 7(a)(1), 5(e).[5]

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS the parties' "Joint Motion for Protective Order" [Doc. 25] and APPROVES and ENTERS the proposed "Joint Protective Order" [Doc. 25-1].

It is SO ORDERED.

Dated: New Haven, Connecticut
       November 18, 2013

                                         /s/*Charles S. Haight, Jr.*
                                         Charles S. Haight, Jr.
                                         Senior United States District Judge

---

[5]   The parties are reminded that "blanket sealing" is generally disfavored. *Doctor's Assoc. Inc.*, 2007 WL 2782516, at *1.   In moving to seal, they must specify the particular portions of the disks to be sealed and the corresponding reasons for sealing them.